JOHN M. SCORSINE
JASON BELL
THE KANTHAKA GROUP
1465 N. Union Blvd. Suite 100
Colorado Springs, CO 80909
Telephone: (719) 633-2222
E-mail: jscorsine@kanthakagroup.com

*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| STEVE ALIRE, deceased, by his spouse, Arlinda Alire; and, ARLINDA ALIRE, Individually ) ) ) ) Plaintiffs, ) ) v. ) ) OFFICER THOMAS WIHERA, in his individual and official capacity; OFFICER THOMAS NELSON, in his individual and official capacity; CITY OF GRAND JUNCTION (GRAND JUNCTION POLICE DEPARTMENT); DEPUTY JASON BAILEY, in his individual and official capacity; DEPUTY SHAVER HANSON, in his individual and official capacity; COUNTY OF MESA (Mesa County Sheriff's Office); and, JOHN/JANE DOES, 1 – 10, unidentified members of the various law enforcement agency defendants, in their individual and personal capacities. ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ **JURY TRIAL DEMANDED** |
| Defendants. ) | |

---

## CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY

---

Plaintiff ARLINDA ALIRE, on behalf of her deceased spouse, STEVE ALIRE, and additionally for her own cause of action by and through one of her attorneys, John M. Scorsine, of the Law Offices of John M. Scorsine P.L.L.C., d/b/a the Kanthaka Group, complains against Defendants and requests trial by jury as follows:

## I. INTRODUCTION

1.     This is an action brought by ARLINDA ALIRE, the spouse of STEVE ALIRE, a 51-year-old man of Hispanic heritage, to vindicate profound deprivations of his constitutional rights caused by the unwarranted brutality and wrongful death inflicted upon him on 17 March 2020 in the vicinity of Grand Junction, Colorado, by law enforcement personnel of the Mesa County Sheriff's Office and the Grand Junction Police Department.

## II.  JURISDICTION, VENUE, AND NOTICE

2.     This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to 28U.S.C. §§ 1331, 1343, 2201.

3.     This case is instituted in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

4.     Various claims raised in Counts Four and Five are properly before this Court and rely upon this Court's exercise of Supplemental Jurisdiction pursuant to 28 U.S. C. 1367.

## II.  PARTIES

### A.  Plaintiffs

5.      At all times relevant hereto, STEVE J. ALIRE, the deceased, was a resident of the State of Colorado and a citizen of the United States of America. (Hereinafter, "ALIRE")



6.      ALIRE was lawfully married to ARLINDA ALIRE at the time of his death.  He is survived by his wife and two adult children, Matthew Alire and Benjamin Alire.

**7.**      ARLINDA ALIRE was the lawful spouse of ALIRE at the time of his death and is a proper party to bring this survival action pursuant to 42 U.S.C. 1988; the laws of the State of Colorado, specifically C.R.S. 13-21-201, *et. seq*.; and *Robertson v. Wegmann*, 436 U.S. 584(1978).

### B.  Defendants

### Institutional Defendants

8.      The Defendant CITY OF GRAND JUNCTION (hereinafter, "CITY") is a municipality which operates, manages, directs, and controls the GRAND JUNCTION POLICE DEPARTMENT (hereinafter, "GJPD")

9.      The Defendant MESA COUNTY (hereinafter "COUNTY") is a political subdivision of the State of Colorado and in coordination with the Mesa County Sheriff, an elected official, operates, manages, directs, and controls the MESA COUNTY SHERIFF'S OFFICE (hereinafter, "MCSO").

**Grand Junction Police Department Defendants**

10.     At all times relevant hereto, Defendant THOMAS WIHERA was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant City of Grand Junction.  Defendant THOMAS WIHERA is sued individually and in his official capacity.  (Hereinafter, "WIHERA")

11.     At all times relevant hereto, Defendant THOMAS NELSON was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant City of Grand Junction.  Defendant THOMAS NELSON is sued individually and in his official capacity. (Hereinafter "NELSON")

12.     Unknown or unnamed members of the Defendant City of Grand Junction's Police Department will subsequently be identified and sued in their respective individual and official capacities.  ("JOHN/JAN DOES 1-10")

**Mesa County Sheriff's Office Defendants**

13.     At all times relevant hereto, Defendant JASON BAILEY was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant MESA COUNTY's Sheriff's Office. Defendant JASON BAILEY is sued individually and in his official capacity. (Hereinafter, "BAILEY")

14.     At all times relevant hereto, Defendant SHAVER HANSON was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant Mesa County's Sheriff's Office. Defendant SHAVER HANSON is sued individually and in his official capacity. (Hereinafter, "HANSON")

15.     Unknown or unnamed members of the Defendant Mesa County's Sheriff's Office will subsequently be identified and sued in their respective individual and official capacities. ("JOHN/JAN DOES 1-10")

### III. STATEMENT OF FACTS

16.     Plaintiff incorporates all of the preceding paragraphs, including the allegations and the Introduction, as if they were fully set forth again at this point.

### *The Scene*

17.     The specific events complained of occurred on 17 March 2020 in the vicinity of Grand Junction, Colorado.

18.     The weather at the time of the events discussed is reported by the National Weather Service as having been sunny, with temperatures in the lower 60's F, and with winds from the south at between 10 and 14 mph.  Sunset on 17 March 2020 was at approximately 1923 with nautical twilight at about 2021.

19.     Neither inclement weather nor darkness were factors in the events complained of herein.

20.     Two locations are relevant to the matters complained of herein:

    a.     Orchard Mesa Middle School, 2736 C Rd, Grand Junction, CO  81503, hereinafter the "School."

    b.     The residence of Alire located at 312 ¾ 27 3/8 Road, Grand Junction, CO 81503, hereinafter the "Residence."



19.     The Residence and the School are approximately opposite one another on 27 3/8 Road with the Residence being to the east of the road.



### *The Initial Call*

20.     On 17 March 20, the Grand Junction Police Department (GJPD) responded to the Orchard Mesa Middle School (OMMS) in response to a 911 call from Bryson Thomas and a 911 call from  Noah  Quintana-Stewart at approximately  7:13 PM.

21.     It was reported that there had been confrontation between ALIRE and a group of men playing basketball at the School outdoor basketball court.

22.     It is alleged that after this initial confrontation, Alire returned  to  the  end  of  his driveway carrying what the  males in the basketballcourt subsequently referred to as a "black rifle" or an "AR  rifle." ALIRE is alleged to have then laid down  on the ground  and  pointed the rifle at the males on the basketball court. The males on the basketball court ran away.

23.     In response to the 911 calls, two GJPD officers were dispatched and initially parked 187 feet from the Residence.

### *Confrontation and Shooting*

24.     As the law enforcement response began to stage and deploy, at least seven (7) officers were deployed to the vicinity of the Residence, from the GJPD and the MCSO.

25.     No interviews or statements of any alleged victim of any alleged criminal act had yet to occur.

26.     Without adequate investigation, the officers and deputies responding were unaware of the accuracy of the 911 calls, the proper identity of any suspect, and whether or not ALIRE was a victim of 'SWATTING.'[1]

27.     The officers and deputies attempted to make contact with ALIRE who was believed to be in the Residence.

28.     Ultimately, the law enforcement personnel used a public address system to contact ALIRE.

29.     In response to the public address system's use, ALIRE exited his home carrying an Airsoft ™ rifle asserted to be a stylized military weapon.

30.     Airsoft ™ is a competitive team shooting sport and is non-lethal.  The guns are typically stylized forms of military weapon systems and shoot a BB like projectile of 6mm to 8mm in diameter.  Its effective range is generally about 40 to 60 meters.

31.     As a replica device, the Airsoft is sold with an orange muzzle to identify it as a toy or non-firearm.

32.     Airsoft  projectiles are less injurious than paintball projectiles and as such are often used in law enforcement and military training scenarios.

33.     The law enforcement officers on the scene and particularly WIHERA, NELSON, BAILEY and HANSON would have been familiar with Airsoft replicas and based upon information and belief would have even trained with such devices:

---

[1] "Swatting" is a criminal harassment tactic of deceiving an emergency service (via such means as hoaxing an emergency services dispatcher) into sending a police and emergency service response team to another person's address. This is triggered by false reporting of a serious law enforcement emergency, such as a bomb threat, murder, hostage situation, or a false report of a "mental health" emergency, such as reporting that a person is allegedly suicidal or homicidal and may or may not be armed.

a.   WIHERA is reported to be a field training officer, member of his agency's SWAT team;

b.   NELSON is reported to be a field training officer and defensive tactics instructor;

c.   BAILEY is reported to be a field training officer, use of force instructor, firearms instructor,  and  member  of  his  agency's  SWAT  team.   It  is further reported that he did two tours in Iraq as a member of the United States Marine Corps;

d.   HANSEN is reported to be a field training officer, firearms instructor, and member of his agency's SWAT team.

34.   Each of the individually named defendants by experience or training would have been skilled  in  the  identification  of  actual  firearms  and  in  distinguishing  them  from  replicas  used  in sporting events or training.

35.   Though the named defendants repeatedly have reported the replica to be an AR style weapon; in fact, it appears to have been an airsoft replica of a French FAMAS F1 rifle.



36.   Each of the individually named defendants should have recognized the Airsoft device as a replica due to its manufacturer installed safety features.

37.   Further,  the  Defendants  WIHERA,  NELSON,  BAILEY  and  HANSON  being professionals at arms would have been aware that an actual FAMAS F1 rifle is extremely rare in the United States, with it being estimated that only 50 to 100 rifles were imported into the United States

and the estimated collector's price is $6,500 to $9,000; making it highly unlikely that ALIRE would have been in possession of a functional firearm of that nature.[2]

38.　　ALIRE threw the Airsoft replica toward the Defendants WIHERA, NELSON, BAILEY and HANSON and declared its non-lethal nature.

39.　　ALIRE then returned into the Residence.

40.　　ALIRE exited his Residence at least twice more, each time going to the replica and then throwing it or kicking it closer to Defendants WIHERA, NELSON, BAILEY and HANSON.

41.　　At various times, ALIRE was heard making statements indicative of suicidal ideation.

42.　　On at least one occasion, ALIRE exited the Residence and was observed apparently recording the scene outside the Residence on his phone.  On another sojourn from his house, it appears ALIRE set his phone camera in a fixed position to record the ongoing events.

43.　　The law enforcement officers on scene, including the Defendants WIHERA, NELSON, BAILEY and HANSON at no time attempted to defuse the situation by recovering the replica device.

44.　　ALIRE exited his home one last time and again approached the Airsoft replica.

45.　　On his last approach of the Airsoft replica he was mortally shot, by not less than sixteen discharged rounds, from the firearms of Defendants WIHERA, NELSON, BAILEY and HANSON.

46.　　Lethal force was applied against ALIRE though the Defendants WIHERA, NELSON, BAILEY and HANSON had less than lethal resources at their disposal and upon information and belief would have had access to standard Level III ballistic shields and other protective devices.

---

[2] https://www.rockislandauction.com/detail/57/447/famas-french-state-arsenal-bullpup-rifle-preban-sold-view-price, accessed on 13 March 2021.

47.     Despite the presence of various less-than-lethal alternatives and various other protective measures that could have been deployed, the Defendants WIHERA, NELSON, BAILEY and HANSON were determined that they would not de-escalate the situation non-violently; they had determined that the situation would be resolved by threat and use of lethal force.

### *Aftermath*

48.     ALIRE's death was ruled a homicide by the coroner, due to multiple gunshot wounds. It is understood he died on the scene.

49.     The officers' and deputies' hail of gunfire resulted in the bullets discharged collectively, and most notably, perforating the heart, pulmonary trunk, lungs,liver, stomach, diaphragm, right kidney, and the left brachial artery, resulting in massive blood loss and ALIRE'S subsequent death

50.     ALIRE was known to the local law enforcement agencies and was known to have significant mental and behavioral health issues.

51.     At the time of the incident, ALIRE would reasonably have been expected to appear to the Defendants WIHERA, NELSON, BAILEY and HANSON as in an altered state of consciousness.

52.     Postmortem testing indicates that ALIRE was under the influence of ethanol and methamphetamine.

53.     ALIRE had numerous past contacts with law enforcement agencies in the Mesa County/Grand Junction community.

54.     Despite his past contacts with law enforcement, their knowledge of his behavioral health issues, and his unquestionable altered level of consciousness, no effort was made by the law enforcement officers to defuse the situation through the use of mental health or behavioral health providers.

55.     There were no exigent circumstances present that warranted the escalation of the situation by the law enforcement response.

a.     A secure perimeter had been established;

b.     Weather was favorable;

c.     Lighting could have been provided by allied first response agencies or other county and city departments;

d.     No hostages were alleged to being held in the residence; and,

e.     The safety of bystanders was never raised as a concern.

56.     The officers, deputies and/or their respective vehicles are known to have been equipped with video surveillance systems.  Those recordings are reportedly not present.

57.     The video believed to have been recorded on ALIRE's phone has reportedly been deleted while in the custody of law enforcement personnel.

58.     Home security video of the incident is reportedly missing after law enforcement searched the Residence.

59.     Other videos which are reportedly in the possession of the defendant COUNTY or CITY have been reported to be non-conclusive and have not been released.

60.     The shooting of ALIRE at the time was the ninth use-of-deadly-force investigation to be conducted by the Mesa County Critical Incident Response Team since 2018. No officers have been charged or even criticized for excessive force in any of those cases.

61.     As in the eight cases preceding the ALIRE shooting, the District Attorney for Mesa County exonerated the Defendants WIHERA, NELSON, BAILEY and HANSON.

## IV.  STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth Amendment Violation – Excessive Force

62.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63.     At all times relevant to the allegations in this Complaint, WIHERA and NELSON acted under color of state law, and within the course and scope of their official duties and employment in their capacities as officers of GJPD.

64.     At all times relevant to the allegations in this Complaint, BAILEY and HANSON acted under color of state law, and within the course and scope of their official duties and employment in their capacities as deputies of MSCO.

65.     Defendants CITY, COUNTY, GJPD, and MCSO are "persons" under 42. U.S.C. § 1983**.**

66.     Under the Fourth Amendment, as applicable against the states by the Fourteenth Amendment, ALIRE had a clearly established constitutional right to be secure in his person against unreasonable seizures through the use of excessive force.

67.     Under the application of the specific facts and totality of circumstances as described herein, the Defendants WIHERA, NELSON, BAILEY and HANSON violated ALIRE'S clearly established constitutional rights.

68.     The Defendants WIHERA, NELSON, BAILEY and HANSON did not have a valid legal basis to seize ALIRE. There not yet being reasonable suspicion or probable cause to believe that ALIRE had committed any crime.

69.     The Defendants WIHERA, NELSON, BAILEY and HANSON did not have a valid basis to seize ALIRE in the manner and with the level of force used under the circumstances present.

70.     The Defendants WIHERA, NELSON, BAILEY and HANSON unlawfully seized ALIRE by means of objectively unreasonable and excessive force when they had no reasonable belief ALIRE had committed or was going to commit a crime, possessed a weapon, or posed a threat to any officer or any other person.

71.     Unnamed GJPD and MCSO Defendants (John and Jane Does) who observed the named GJPD and MCSO Defendants unlawful seizure and use of force against ALIRE had a legal duty to intervene to stop this illegal conduct.

72.     The Defendants WIHERA, NELSON, BAILEY and HANSON along with the unnamed GJPD and MCSO Defendants engaged in and/or failed to intervene in the use of force that was objectively reasonable in light of the facts and circumstances surrounding the incident, violating ALIRE'S Fourth Amendment rights.

73.     Defendants WIHERA, NELSON, BAILEY and HANSON along with the unnamed GJPD and MCSO Defendants actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

74.     Any reasonable law enforcement officer in their position would have known that it was unreasonable to use the amount, type, and duration of forced used – or to fail to intervene to attempt to prevent the use of such force – and that to do so (or to fail to intervene to prevent the use of such force) would violate ALIRE'S clearly established constitutional rights.

75.     Defendants WIHERA, NELSON, BAILEY and HANSON along with the unnamed GJPD and MCSO Defendants excessive use of force and/or failure to intervene to prevent the excessive use of force caused ALIRE to be unlawfully seized and thereby caused his death.

76.     Defendants WIHERA, NELSON, BAILEY and HANSON along with the unnamed GJPD and MCSO Defendants actions, as described herein, were motivated by malice and/or invoked reckless or callous indifferences to ALIRE's federally protected rights, and they engaged in these

actions and omissions intentionally, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, ALIRE'S constitutionally protected rights under the Fourth and Fourteenth Amendment.

## SECOND CLAIM OF RELIEF
### 42 U.S.C. § 1983
### Eighth Amendment Violation – Cruel and Unusual Punishment

77.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

78.     Under the Eighth Amendment, as applicable against the states by the Fourteenth Amendment, ALIRE had a clearly established constitutional right to be free of the infliction of cruel and unusual punishment.

79.     Under the application of the specific facts and totality of circumstances as described herein, the Defendants WIHERA, NELSON, BAILEY and HANSON violated ALIRE'S clearly established constitutional rights.

80.     From shortly after the arrival of the responding officers and deputies, ALIRE was essentially in custody. His residence was surrounded; he had disarmed himself by throwing his toy weapon at the officers; he was most certainly not free to leave; and, the officers and deputies had controlled the situation, with the exception of the actual physical restraint of ALIRE.

81.     Under the circumstances, ALIRE was solely dependent upon the officers and deputies for the provision of behavioral health resources necessary to defuse the situation.

82.     The Defendants WIHERA, NELSON, BAILEY and HANSON failed to provide for the medical and behavioral health needs of ALIRE.

83.     The Defendants WIHERA, NELSON, BAILEY and HANSON, in an extrajudicial manner, without due process or affording ALIRE the Constitutional protections to which he was entitled, imposed death upon ALIRE.

84.     Defendants WIHERA, NELSON, BAILEY and HANSON acted in a manner that inflicted upon ALIRE undue pain and serious injury, resulting in his death.

85.     The Defendants WIHERA, NELSON, BAILEY and HANSON knew that their application of deadly force was likely to result in substantial, serious, and permanent injury to ALILRE or in his death.

86.     The Defendants WIHERA, NELSON, BAILEY and HANSON acted sadistically and maliciously in the application of deadly force; they did so with a deliberate indifference to the mental state and behavioral health issues of ALIRE and with the same indifference as to the natural consequence of their actions.

87.     Defendants WIHERA, NELSON, BAILEY and HANSON actions, as described herein, were motivated by malice and/or invoked reckless or callous indifferences to ALIRE's federally protected rights, and they engaged in these actions and omissions intentionally, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, ALIRE'S constitutionally protected rights under the Eighth and Fourteenth Amendment.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983**
**Municipal Policy, Custom, and/or Failure to Train/Supervise**
**(Against City of Grand Junction and County of Mesa)**

88.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

89.     The shooting of ALIRE is the ninth use of deadly force investigation to be conducted by the Mesa County Critical Incident Response Team since 2018.

90.     A review of publicly available statistics provides that:

a. Mesa County has a population of only 155,000[3].

b. In the two years before the shooting of ALIRE, Mesa County has nine (9) police shootings.

c. In 2019, the police in the US killed 33.5 per 10,000,000 people; or, 0.33 per 100,000 against Mesa County's annual rate of 3.0 per 100,000.

d. Mesa County's rate for police involved shootings is ten time the national average.

e. On the same year, 2019, in Colorado 36 people were killed by police; or a rate of 0.6 per 100,000. Mesa County is fivefold the state rate.[4]

91. The foregoing statistics alone should have placed the CITY and COUNTY leadership on notice that systemic and pervasive cultural issues exist within the community's law enforcement personnel.

92. In each of the above-mentioned shootings in Mesa County, including that involving ALIRE, alternatives to force should have been used first and/or in place of force to help control the situation.

93. In this particular case, it is important to note that the initial 911 call was at 1913 and it was over an hour later that ALIRE was shot and killed by the officers and deputies.

a. During that period, the scene had been secured and there were no exigent circumstances warranting an escalation by law enforcement.

b. During that period, no effort was made to involve behavioral health professionals in the process of dealing with this mental health crisis.

---

[3] United States Census Bureau reports a population of 154,210 in 2019. For computational purposes it has been rounded to 155,000.
[4] Washington Post, https://www.washingtonpost.com/graphics/2019/national/police-shootings-2019/ accessed on 13 March 2021.

    c.      Ultimately, ALIRE was shot and killed by law enforcement officers for a failure to comply with their demands while in a mental health crisis.

    d.      ALIRE had expressed suicidal ideations to the responding officers and rather than de-escalating and utilizing behavioral health professions, the officers and deputies choose to become the instrumentality of ALIRE's suicide.

94.    The acts and omissions in which the GJPD and MCSO Defendants engaged were because of and pursuant to the customs, practices, policies and/or training of GJPD and MSCO.

95.    As alleged in detail above, GJPD and MSCO has a custom, policy, and practice of encouraging, condoning, tolerating, ratifying, and even rewarding the use of excessive force by GJPD officers and MSCO deputies. This is manifested through, among other things, GJPD and MSCO's grossly inadequate training, supervision, and discipline of GJPD officers and MSCO deputies relating to the use of excessive force.

96.    CITY and COUNTY were on notice of GJPD and MSCO's defective customs, polices and/or practices before GJPD and MSCO's excessive use of force against ALIRE.

97.    The need for additional and effective use of force policies, training, and/or supervision was obvious, and CITY and COUNTY exhibited deliberate indifference to the known and substantial risk of harm to ALIRE and others by failing to create adequate use of force policies and/or to adequately train or supervise GJPD officers and MSCO'S deputies in the use of force.

98.    The CITY and COUNTY's failure to create and implement adequate use of force policies and/or to adequately train and/or supervise GJPD officers and MSCO'S deputies in the use of force was substantially certain to cause GJPD officers and MSCO'S deputies to violate the constitutional rights of individuals like ALIRE to be free from excessive force, and these Defendants consciously or deliberately chose to disregard this risk in failing to change the use of force polices and/or adequately train and/or supervise GJPD officers and MSCO'S deputies in the use of force.

These acts and/or omissions constitute a deliberate choice by Defendant CITY and Defendant COUNTY among several alternatives to pursue a course of action regarding creating and implementing policies, training, and supervision in the area of the use of force.

99.     CITY and COUNTY set in motion a series of events that they knew would cause ALIRE, or an individual in a similar situation as ALIRE to be deprived of his constitutional right to be free from excessive force.

100.    But for the above acts or omissions of CITY and COUNTY, GJPD and MSCO would not have violated ALIRE'S constitutional rights, and such a deprivation was a natural and foreseeable consequence of CITY and COUNTY's acts and omissions.

101.    The herein described acts or omissions of CITY, COUNTY and each individual GJPD and MSCO Defendant were the moving force behind the violation of ALIRE's constitutional right to be free from excessive force and proximate cause of Plaintiff estate's significant injuries, damages, and losses including ALIRE's death.

102.    The herein described acts or omissions of CITY, COUNTY and each individual GJPD and MSCO Defendant were the moving force and the legal, direct, and proximate cause of Plaintiff Estate's injuries and losses, including but not limited to ALIRE's death, the physical and mental pain and anguish ALIRE suffered before and during his death, loss of ALIRE'S relationship and companionship with his wife, children and friends, the loss of ALIRE'S constitutional rights, his loss of enjoyment of life, and other compensatory and special damages including but not limited to ALIRE's permanent lost earnings and earnings capacity, medical bills and funeral expenses.

103.    The Defendants' intentional actions or inactions as described herein intentionally deprived ALIRE of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

104.    The CITY and COUNTY have failed to appropriately discipline, retrain and/or otherwise supervise officers and deputies to use force only when objectively reasonable and/or within constitutional limits.

105.    By persistently failing to adequately criticize, discipline, retrain and/or otherwise supervise officers who violate the constitution, CITY and COUNTY has and continues to encourage its officers and deputies to misuse their authority. CITY and COUNTY has and continues to act with deliberate indifferences to those citizens who have and/or continue to be hurt or killed by its officers and deputies.

106.    This action and inaction, as articulated above, has been and continues to be a moving force behind the constitutional injuries suffered by those in similar situations at to ALIRE, and others who may be unlucky enough to come into contact with GJPD officers and MSCO deputies on a daily basis.

## FOURTH CLAIM OF RELIEF
### 42 USC 1983
### *Substantive Due Process*

107.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

108.    ARLINDA ALIRE had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her husband, ALIRE (Decedent).

109.    The actions of all Defendants served to deprive ARLINDA ALIRE of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her husband, ALIRE (Decedent).

110.    As a result, ARLINDA ALIRE has suffered uniquely individual damages and injuries not otherwise addressed in Counts One through Three.

111.    Plaintiff, Arlinda Alire, as the surviving spouse of ALIRE, suffered and continues to suffer economic and non-economic damages due to WIHERA, NELSON, BAILEY and HANSON's conduct, including but not limited to extreme emotional stress, grief, loss of companionship, impairment of quality of life, inconvenience, pain and suffering, funeral expenses, and financial losses due to the financial benefits she may have reasonably been expected to receive from her husband had he lived.

### FIFTH CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-201 *et seq.*
### Battery Causing Wrongful Death

112.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

113.    Pursuant to Colo. Rev. Stat §§ 24-10-105(1) and 24-10-118(2)(a), public employees like WIHERA, NELSON, BAILEY and HANSON are not immune under the Colorado Governmental Immunity Act ("CGIA") for acts or omissions that are willful and wanton.

114.    Pursuant to Colo. Rev. Stat. § 24-100-109, Plaintiff provided Defendants CITY and COUNTY with timely notice of claim.

115.    Defendants WIHERA, NELSON, BAILEY and HANSON intentionally shot ALIRE with the intent to inflict harmful contact on ALIRE, and which such contact caused injury to ALIRE, namely his death.

116.    As described in detail above, WIHERA, NELSON, BAILEY and HANSON's shooting of ALIRE did not constitute the use of reasonable force because the shooting was in excess of the amount of force that an officer in their position would have reasonably believed necessary to detain or arrest ALIRE.

117.   WIHERA, NELSON, BAILEY and HANSON's intentional infliction of physical harm upon ALIRE, causing his death, was without legal authorization, privilege, or consent.

118.   In shooting ALIRE, WIHERA, NELSON, BAILEY and HANSON consciously disregarded a substantial and unjustifiable risk of danger of death or serious bodily injury to ALIRE.

119.   WIHERA, NELSON, BAILEY and HANSON's willful and wanton conduct caused ALIRE'S death and the Plaintiffs' damages.

120.   WIHERA, NELSON, BAILEY and HANSON'S conduct was attended by circumstances of malice, or willful or wanton conduct, which they must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences to ALIRE and his safety.

121.   WIHERA, NELSON, BAILEY and HANSON's conduct also constituted felonious killing under C.R.S. §§ 13-21-203 and 15-11-803, in that his conduct caused the death of ALIRE and that WIHERA, NELSON, BAILEY and HANSON (1) consciously disregarded (2) a substantial and (3) unjustifiable risk that they knew would (4) cause the death of another, namely ALIRE.

122.   Plaintiff, Arlinda Alire, as the surviving spouse of ALIRE, suffered and continues to suffer economic and non-economic damages due to WIHERA, NELSON, BAILEY and HANSON's conduct, including but not limited to extreme emotional stress, grief, loss of companionship, impairment of quality of life, inconvenience, pain and suffering, funeral expenses and financial losses due to the financial benefits she may have reasonably been expected to receive from her husband had he lived, and all other damages as allowed under the Colorado Wrongful Death Act.

### FIFTH CLAIM FOR RELIEF
**Deprivation of State Rights**
**C.R.S. 13-21-131**

123.   Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

124.    The Law Enforcement Integrity Act, Colorado Senate Bill 20-217, was enacted by the State of Colorado on 19 June 2020.

125.    The Act was passed in response to the Legislature's grave and serious concerns surrounding the unreasonable use of force by law enforcement officers.

126.    The provisions of the Act, as applied in this Count, do not violate the prohibition of retroactive legislation, when applied to the claims of ALIRE, where the underlying causes of action resulting from violation of State Constitutional rights (i.e. wrongful death, assault, battery) previously existed and the Act impacted procedural and remedial changes in existing law. (i.e. removing such actions from the procedures of the Colorado Governmental Claims Act and elimination of qualified immunity)

127.    Application of a statute to a subsisting claim for relief does not violate the prohibition of retroactive legislation when the statute effects a change that is procedural or remedial in nature. *Cont'l Title Co. v. District Court*, 645 P.2d 1310 (Colo. 1982); *Davis v. Bd. of Psychologist Exam'rs*, 791 P.2d 1198 (Colo. App. 1989); *Loredo v. Denver Pub. Sch. Dist. 1*, 827 P.2d 633 (Colo. App. 1992)27 P.2d 633 (Colo. App. 1992)

128.    Moreover, the clear intent of the Legislature was to effect remedial and procedural changes to current law in order to address a matter of statewide concern, to wit, to hold law enforcement personnel accountable for violations of the rights of the members of the public with who they may interact in the course of their duties.

129.    The provisions of C.R.S. 13-21-131 are retrospective in nature and impact the the claims of ALIRE existing at the time of enactment.

130.    The Defendants WIHERA, NELSON, BAILEY and HANSON are each a peace officer as defined by C.R.S. 24-13-901(3).

131.    As a result, neither the defense of qualified immunity nor the protections afforded by the Colorado Governmental Immunities Act are applicable to claims under C.R.S. 13-21-131.

132.    The conduct of the Defendants WIHERA, NELSON, BAILEY and HANSON as complained of above was violative not only of those rights afforded ALIRE under the United States Constitution, but under those rights, privileges and immunities afforded ALIRE by the Constitution of the State of Colorado.

133.    Specifically, conduct of the Defendants WIHERA, NELSON, BAILEY and HANSON was violative of the following sections of Article II of the Constitution of the State of Colorado:

a.  Section 3:  *Inalienable rights.* All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

b.  Section 6:  *Equality of justice*. Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

c.  Section 7:  *Security of person and property searches seizures warrants*. The people shall be secure in their persons, papers, homes, and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

d.  Section 8:  *Prosecutions,  indictment or information.* Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. In all other cases, offenses shall be prosecuted criminally by indictment or information.

e.  Section 16:  *Criminal prosecutions  rights of defendant.* In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the

county or district in which the offense is alleged to have been committed.

    f.   Section 25. *Due process of law*. No person shall be deprived of life, liberty or property, without due process of law.

121.  Statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section.

122.  The Defendants WIHERA, NELSON, BAILEY and HANSON are liable to ALIRE for legal or equitable relief or any other appropriate relief for these deprivations of rights.

123.  Hereunder, ALIRE seeks recovery for the injuries and harm he suffered related to the following legal, statutory and common law actions:

    a.  Wrongful Death
    b.  Assault
    c.  Battery
    d.  Intentional Infliction of Emotional Harm
    e.  Negligent Infliction of Emotional Harm.

124.  In any action brought pursuant to C.R.S. 13-21-131, a court shall award reasonable attorney fees and costs to a prevailing plaintiff.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law and equity, including, but not limited to the following:

(a)    Declaratory and injunctive relief, as appropriate;

(b)    Past and future economic losses on all claims allowed by law, including but not limited to lost earnings and funeral and medical related expenses, in an amount to be determined at trial;

(c)    Compensatory and consequential damages, including, but not limited to, damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d)    Punitive damages on all claims allowed by law and in an amount to be determined at

trial;

(e)     Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(f)     Pre- and post-judgment interest at the lawful rate;

(g)     Any further relief that his court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF DEMANDS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 15th day of March 2021.

s/ *John M. Scorsine*
John M. Scorsine
The Kanthaka Group
1465 N. Union Blvd. Suite 100
Colorado Springs, CO 80909
Telephone: (719) 633-2222
E-mail: jscorsine@kanthakagroup.com
Attorney for Plaintiff